United States District Court
Southern District of Texas
**ENTERED**
February 01, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY DALE GREEN, #00782210, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-0137 |
| | § | |
| BETTY JO WILLIAMS, M.D., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against Texas Department of Criminal Justice ("TDCJ") physician Betty Jo Williams, M.D., former Estelle Unit Warden FNU Wilkerson, and an unknown "head representative" for the physical therapy department.  He subsequently filed a more definite statement of his claims, and identified "Dr. Abrams" as the previously unknown head representative. (Docket Entry No. 18, p. 4.)  Plaintiff names the defendants in their "official and unofficial capacities."  (Docket Entry No. 1, p. 1.)

Defendant Williams was served with process and filed a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(1).  (Docket Entry No. 21.)  The Office of the Attorney General filed an Amicus Curiae Advisory, notifying the Court that defendant former "Warden FNU Wilkerson" could not be identified. (Docket Entry No. 22.)  Although plaintiff subsequently identified "Dr. Abrams" as the head representative for the physical therapy department, he did not file an amended section 1983 complaint substituting Abrams

for the unknown defendant.  Nevertheless, because plaintiff's factual allegations against former Warden FNU Wilkerson and Abrams fail to raise a viable section 1983 claim, the Court will address and dismiss the claims against these two defendants.

Having considered the complaint, the more definite statement, the motion to dismiss, the record, matters of public court record, and the applicable law, the Court **GRANTS** the motion to dismiss and **DISMISSES** this lawsuit for the reasons shown below.

## I.  BACKGROUND AND CLAIMS

Plaintiff alleges in his complaint and more definite statement that he was diagnosed with prostate cancer in 2015 while in prison and was placed on Lupron, an anti-cancer drug. He claims that the Lupron cured his cancer but worsened his osteoporosis and caused vertebral compression fractures and chronic back pain in 2015.[1]  Physicians at the Hughes Unit, Jester Unit, and Estelle Unit prescribed him the narcotic morphine for his chronic back pain from 2015–2018, but it was discontinued in mid-2018 by defendant Williams at the

---

[1]Plaintiff has a long history of spinal fractures and vertebral compression fractures. According to one of his prior prisoner lawsuits, plaintiff was involved in a motor vehicle accident in 1976 that resulted in spinal compression fractures of his thoracic and lumbar vertebrae and required surgical insertion of temporary spinal rods. *Green v. Reginald Stanley, M.D.*, C.A. No. 01-CV-0019 (E.D. Tex.).  He also reported sustaining spinal compression fractures in two prisoner altercations in 1997 and 2000.  Plaintiff claimed in that earlier lawsuit that his orthopedic surgeons said his "spine was beyond repair" and would require lifelong pain medication. *Id.*  Plaintiff complained in the lawsuit that defendant prison physician Stanley refused to continue plaintiff's daily long-term "free world" narcotic pain medications, opting instead for non-narcotic medications.  As in the instant lawsuit, plaintiff sought permanent injunctive relief to obtain narcotics.  The lawsuit was dismissed with prejudice as plaintiff's disagreement with his medical treatment did not raise an Eighth Amendment claim, particularly in light of plaintiff's admitted dependency on narcotics. The Court notes these events solely as background information.

2

Estelle Unit due to a Correctional Managed Care Pharmacy Policy and Procedure ("CMC Policy") change for prisoner narcotic prescriptions.  According to plaintiff, the new CMC Policy banned use of narcotics for chronic pain care except for prisoners with active cancer. As he had no active cancer at the time, the morphine was discontinued.  Plaintiff states that he was prescribed gabapentin and anti-inflammatory drugs such as ibuprofen, but that the treatments did not work as well as morphine and he remained in pain.  Plaintiff claims that Williams and the CMC Policy discriminated against him.  Plaintiff was transferred to the Stiles Unit in March 2020, where he remains incarcerated.

Plaintiff further claims that Abrams failed to provide him physical therapy services from September 2015 through July 2018, at which time he received his first physical therapy session at the Estelle Unit.  (Docket Entry No. 18, p. 1.)  He contends that Abrams was deliberately indifferent to his need for physical therapy, and argues that the lack of physical therapy services, as opposed to the medical conditions themselves, have resulted in his permanent confinement to a wheelchair.

Plaintiff contends that the defendants violated his constitutional rights by failing to prescribe him narcotics for his chronic pain and failing to provide physical therapy services. He seeks monetary damages of $200,000.00 and injunctive relief in the form of narcotics and physical therapy. Because defendant Wilkerson could not be identified as a TDCJ employee, defendants Williams and Abrams are the only defendants who would be subject to any

injunctive relief ordered by the Court. Therefore, the Court liberally construes plaintiff's claim as seeking injunctive relief against Williams and Abrams.

## II.  LEGAL STANDARDS

A.      28 U.S.C. §§ 1915(e), 1915A

Because plaintiff is a prisoner who has been granted leave to proceed *in forma pauperis*, the Prison Litigation Reform Act requires the court to screen the pleadings. The court must dismiss the case at any time, in whole or in part, if it determines that the action is frivolous or fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

A complaint may be dismissed as frivolous under section 1915(e)(2)(B)(i) "if it lacks an arguable basis in law or fact." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A dismissal under section 1915(e)(2)(B)(ii) for failure to state a claim is governed by the same standard as under FRCP 12(b)(6). *See DeMarco v. Davis*, 914 F.3d 383, 386 (5th Cir. 2019); *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). In deciding whether a plaintiff's claim must be dismissed, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rogers*, 709 F.3d at 407 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under this standard, the court construes the complaint liberally in favor of the plaintiff, takes all facts properly pleaded in the complaint as true, and considers whether "with every doubt

4

resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678–79.

In reviewing the pleadings, the court is mindful that plaintiff is proceeding *pro se*. Courts construe *pro se* litigants' pleadings under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, a document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even under this lenient standard, a *pro se* plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Staider*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P 12(d). However, the court may take judicial notice of public

documents, and may also consider documents a defendant attaches to its motion to dismiss if the documents are referenced in the plaintiff's complaint and are central to the plaintiff's claims. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

B.     FRCP 12(b)(1)

FRCP 12(b)(1) allows a party to move to dismiss an action for lack of subject matter jurisdiction. A court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A FRCP 12(b)(1) motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010.

## III.  ANALYSIS

A.     Official Capacity Claims

Plaintiff sues the defendants, in part, for monetary damages against them in their official capacity.   These claims are barred by the Eleventh Amendment.

Neither a state nor a state official sued in his official capacity for damages is a "person" for purposes of liability under section 1983. *Will v. Michigan Dep't of State Police*,

491 U.S. 58, 66 (1989). Moreover, a suit for damages against a state official in his or her official capacity is not a suit against that individual, but rather is a suit against the state. *Id.* The Eleventh Amendment to the United States Constitution bars such suits against a state unless the state has waived its immunity or Congress has abrogated immunity. Neither Congress nor the State of Texas has waived Eleventh Amendment immunity with regard to 42 U.S.C. § 1983. Section 1983 provides a federal forum to remedy the violation of constitutional rights, but "it does not provide a federal forum for litigants who seek to remedy against a state for alleged deprivations of civil liberties." *Will*, 491 U.S. 58 at 66.

Plaintiff's claims for monetary damages against the defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE** as barred by Eleventh Amendment immunity.

B.    Warden FNU Wilkerson

Plaintiff claims that defendant former Estelle Unit Warden FNU Wilkerson discriminated against him by denying one or more of plaintiff's administrative grievances. He further argues that, as warden of the Estelle Unit, Wilkerson was responsible for all wrongful actions of employees under his supervision.

Defendant Wilkerson was not identified and located for purposes of service of process in this lawsuit, and is not before the Court. Even so, plaintiff's factual allegations against him raise no viable issue of a constitutional dimension for purposes of section 1983 and will be dismissed.

A prisoner has no "constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see also Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process."); *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Moreover, supervisory officials such as Wilkerson may be held liable under section 1983 only if they: (1) affirmatively participate in acts that caused constitutional deprivations; or (2) implement unconstitutional policies that causally result in a plaintiff's injuries. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992); *see also Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dep't of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994). Aside from alleging that Wilkerson failed to grant his grievances, plaintiff does not allege that Wilkerson affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between Wilkerson's conduct and any alleged constitutional violation. That is, plaintiff pleads no factual allegations that Wilkerson had any personal

8

involvement in the decisions to discontinue his morphine or not provide physical therapy services. To the contrary, plaintiff pleads vicarious liability, essentially naming Wilkerson as a defendant because of his position as warden of Estelle Unit; this is insufficient to give rise to a viable claim for relief under section 1983.

Plaintiff's claims against former Estelle Unit Warden FNU Wilkerson are **DISMISSED WITHOUT PREJUDICE** for failure to state a viable claim for which relief can be granted under section 1983.

C.     Betty Jo Williams, M.D.

Defendant Williams states in her motion to dismiss that she is a medical doctor employed by the University of Texas Medical Branch, a Texas state agency that provides medical care to TDCJ inmates. (Docket Entry No. 21, p. 2.) Plaintiff asserts that a new CMC pharmacy rule promulgated in September 2018 prohibited narcotic prescriptions for prisoners with chronic pain not caused by active cancer. He claims that Williams and the new rule discriminated against him by discontinuing his morphine prescription which he needed for chronic pain relief.[2] (Docket Entry No. 18, p. 1.)

In addition to suing Williams in her official capacity, plaintiff sues her in her "unofficial capacity." Because the phrase "unofficial capacity" has no clear legal meaning, the Court will liberally construe "unofficial capacity" as meaning "individual capacity" for purposes of plaintiff's claims.

---

[2]Plaintiff expressly states that he is not raising a claim for deliberate indifference against Williams. (Docket Entry No. 18, p. 5.)

Plaintiff contends that Williams discriminated against him by withholding morphine because he did not have active cancer. Assuming plaintiff's allegation raises an issue of constitutional dimension, plaintiff's own factual allegations refute the claim. Plaintiff acknowledges that Williams discontinued plaintiff's morphine prescription pursuant to the new CMC Policy. Plaintiff does not allege that the CMC Policy gave Williams the discretion to prescribe morphine for plaintiff; to the contrary, plaintiff states that the CMC Policy precluded his receipt of morphine because he no longer had active cancer. Consequently, Williams did not discriminate against plaintiff when she discontinued plaintiff's morphine in compliance with the new CMC Policy.

To the extent plaintiff claims that the CMC Policy was unconstitutional in that it discriminated against prisoners with chronic pain but without active cancer, this is not a claim to which Williams is answerable. Plaintiff makes no allegation that Williams promulgated the CMC Policy, or that she had any authority to modify or withdraw the policy or waive its enforcement as to prescribing morphine for plaintiff.

Plaintiff's claims against Williams in her individual capacity are **DISMISSED WITHOUT PREJUDICE**.

C.     Dr. Abrams

Plaintiff claims that Abrams was deliberately indifferent to his need for physical therapy. Although plaintiff's pleadings are unclear, he appears to believe that Abrams was

the individual who failed to provide him physical therapy at various prisons units from 2015 to July 2018.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A showing of deliberate indifference requires the prisoner to evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Deliberate indifference 'is an extremely high standard to meet." *Id.*

Plaintiff's pleadings show on their face that his deliberate indifference claims against Abrams for lack of physical therapy services are partially barred by limitations. Civil rights claims under section 1983 are governed by the two-year statute of limitations provided by

Texas law. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citing TEX. CIV. PRAC. & REM. CODE § 16.003(a)); *see also Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). This means that a plaintiff has two years from the time that his claim arises to file a civil rights complaint under section 1983. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

On the other hand, federal law determines when a cause of action arises under section 1983. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016). A cause of action arises "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured" by actions attributable to the defendant. *Piotrowski*, 237 F.3d at 576 (internal citation and quotations omitted).

Plaintiff's complaint and more definite statement in this case allege that Abrams failed to provide him physical therapy services from September 2015 through October 2018. Plaintiff filed the instant lawsuit no earlier than December 22, 2019. (Docket Entry No. 1, p. 7.) Thus, plaintiff's claims against Abrams that arose prior to December 22, 2017, are barred by limitations.

Consequently, after discounting the timeframe barred by limitations, plaintiff alleges that Abrams was deliberately indifferent in failing to provide him physical therapy services from December 22, 2017, to October 2018. In the instant case, plaintiff's own grievance exhibit shows that he unilaterally declined to accept physical therapy services at some point in 2018 at the Estelle Unit. (Docket Entry No. 1-2, p. 1.) He states that "The 2 missed appts.

with p.t. are explained in writing and are <u>on record</u> that I <u>postponed</u> p.t. until my pain med. issue was resolved.  I <u>did</u> <u>not</u> <u>refuse</u> p.t. and hopefully I will be able to start p.t.  I <u>did</u> go to initial appt. and spoke with doctor." (Docket Entry No. 1-2, p. 4, original emphasis.) Although plaintiff claims that he "postponed" rather than "refused" physical therapy in 2018, the outcome is the same: plaintiff did not receive physical therapy at the Estelle Unit at some point in 2018 because he did not accept the services when they were offered.

In pleading his claims against Abrams, plaintiff relies heavily on his allegation that physicians at Hospital Galveston had recommended that he be provided physical therapy treatment.  Plaintiff contends that Abrams was deliberately indifferent in failing to follow these recommendations.  However, considering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference.  *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Defendant Abrams's decision not to start physical therapy at that time suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances.  *Id*.

Even if Abrams's actions were negligent, acts of negligence or medical malpractice do not constitute deliberate indifference absent exceptional circumstances.  *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).  No such exceptional circumstances appear in plaintiff's complaint or more definite statement.

Plaintiff's disagreement with Abrams's medical decisions and, in turn, Abrams's disagreement with the Hospital Galveston physician's recommendation regarding physical

13

therapy, do not give rise to a colorable claim for deliberate indifference to plaintiff's serious medical needs.

Plaintiff's claims for deliberate indifference against Abrams are **DISMISSED WITHOUT PREJUDICE**.

D.     Injunctive Relief

Plaintiff seeks permanent injunctive relief against Williams and Abrams, and asks the Court to order them to provide him narcotics and physical therapy. Whether brought against the defendants in their official or individual capacities, plaintiff's claims for injunctive relief lack merit and are moot.

The Court dismissed without prejudice plaintiff's claims against Williams and Abrams, *supra*, and plaintiff is not entitled to any judicial relief against the defendants. Even so, plaintiff informed the Court in March 2020 that he had been reassigned to the Stiles Unit, where he currently remains. (Docket Entry No. 14.) Plaintiff's complaint and factual allegations do not show that he remains under the care of Williams or Abrams while at the Stiles Unit. Indeed, plaintiff states in his more definite statement that a Dr. Cortez is providing his pain medications ibuprofen and gabapentin at the Stiles Unit. (Docket Entry No. 18, p. 2.) *See Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("A matter is moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (cleaned up). Moreover, the Stile Unit is located in Beaumont, Texas, which is outside this Court's jurisdiction for purposes of ordering injunctive relief. Plaintiff's

complaint and more definite statement express no factual allegations or suggestions of a

realistic likelihood of his transfer back to the Estelle Unit. *See Herman v. Holiday*, 238 F.3d

660, 665 (5th Cir. 2001). Plaintiff's claims for permanent injunctive relief against Williams

and Abrams are **DISMISSED WITHOUT PREJUDICE**.

### IV.   CONCLUSION

For the above reasons, the Rule 12(b)(1) motion to dismiss filed by defendant Betty

Jo Williams, M.D. (Docket Entry No. 21) is **GRANTED**. Plaintiff's claims for  monetary

damages against Williams in her official capacity are **DISMISSED WITHOUT
PREJUDICE**.

Plaintiff's remaining claims against defendant Betty Jo Williams, M.D., former

Warden FNU Wilkerson, and Dr. Abrams are **DISMISSED WITHOUT PREJUDICE** for

failure to state a colorable claim for relief under section 1983 and/or as barred by Eleventh

Amendment immunity.

Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on _____ FEB 0 1 2023 _____.

_____

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE